# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| MOBRO, INC., d/b/a SERVICEMASTER 380,<br><br>    Plaintiff,<br><br>vs.<br><br>VVV CORPORATION, d/b/a SERVICEMASTER RESTORATION COMPANY, and CLARK COMPANIES, INC., d/b/a SERVICEMASTER DISTRIBUTOR OPERATIONS,<br><br>    Defendants. | No. 12-CV-25-JSS<br><br>ORDER GRANTING MOTION TO DISMISS |

---

## TABLE OF CONTENTS

I.    INTRODUCTION .......................................... 2

II.   PROCEDURAL BACKGROUND ............................. 2

III.  STANDARD OF REVIEW .................................. 2

IV.   FACTUAL BACKGROUND ................................ 3
      A.    Players ......................................... 3
      B.    Franchise Agreement and Partial Assignment .................. 4
      C.    Cedar Rapids Flood .................................. 4
      D.    Alleged Oral Contract ................................ 5
      E.    Aftermath ....................................... 6

V.    ANALYSIS ............................................ 7
      A.    Breach of Contract ................................. 7

**B.**     *Promissory Estoppel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
**C.**     *Parol Evidence Rule/Integrated Agreement* . . . . . . . . . . . . . . . . *12*

**VI.   ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

## I.  INTRODUCTION

The matter before the court is Defendant Clark Companies, Inc.'s "Motion to Dismiss" ("Motion") (docket no. 11).

## II.  PROCEDURAL BACKGROUND

On January 27, 2012, Plaintiff Mobro, Inc., d/b/a ServiceMaster 380, ("Mobro") filed a Petition at Law and Jury Demand (docket no. 3) ("Complaint") against Defendants VVV Corporation, d/b/a ServiceMaster Restoration Co., ("VVV") and Clark Companies, Inc., d/b/a ServiceMaster Distributor Operations, ("Clark Co.") in the Iowa District Court for Linn County, case no. LACV74789. On February 21, 2012, Defendants removed the case to this court on the basis of diversity jurisdiction.

On February 28, 2012, VVV filed an Answer and Affirmative Defenses (docket no. 8). On March 9, 2012, Clark Co. filed the Motion. On March 26, 2012, Mobro filed a Resistance (docket no. 16). On April 2, 2012, Clark Co. filed a Reply (docket no. 17). Clark Co. requests oral argument on the Motion. The court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal on the basis of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009).

A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl.*, 550 U.S. at 556).

Although a plaintiff need not provide "detailed" facts in support of his or her allegations, the "short and plain statement" requirement of FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677-78 (citing *Bell Atl.*, 550 U.S. at 555); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary [under Rule 8(a)(2)]."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl.*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

In determining whether a plaintiff has stated a claim sufficient to survive a Rule 12(b)(6) motion to dismiss, "the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Electric Co.*, 652 F.3d 971, 976 (8th Cir. 2011).

## IV.  FACTUAL BACKGROUND

Accepting all factual allegations in the Complaint as true and drawing all reasonable inferences in favor of Mobro, the facts are as follows.

### A.  Players

ServiceMaster Clean, a nonparty in this action, is the nationwide franchisor of the ServiceMaster Clean brand and is located in Memphis, Tennessee. Mobro is an Iowa

corporation and franchisee of ServiceMaster Clean. It provides remediation services to businesses that have been damaged by water, fire, or other similar events. Mobro is also the ServiceMaster Regional Account Manager ("RAM") for the Iowa region located west of the Mississippi River and east of Des Moines ("the RAM Territory"). VVV is an Illinois corporation and ServiceMaster Clean franchisee that provides similar remediation services nationwide to businesses affected by disaster. Clark Co. is a Minnesota corporation that serves as a Coordinator for franchisor ServiceMaster Clean.

### B. Franchise Agreement and Partial Assignment

As a ServiceMaster Clean franchisee, Mobro entered into a ServiceMaster Franchise Agreement with franchisor ServiceMaster Clean. By the terms of the Franchise Agreement, Mobro obtained a nonexclusive right to operate its ServiceMaster franchise in Linn County. ServiceMaster Clean had the right to transfer or assign any part of the Franchise Agreement to another person or legal entity. ServiceMaster Clean exercised this right and assigned all of its rights to Mobro's monthly franchise fees to Clark Co. This contract, the Partial Assignment of Rights, provided that Mobro was obligated to pay Clark Co. the franchise fees, and that Clark Co. was entitled to collect the fees from Mobro. Clark Co. was also entitled to collect royalty fees and commissions from all ServiceMaster Clean franchisees in its Coordinator Contract Territory (including Mobro) pursuant to a similar Partial Assignment by ServiceMaster Clean.

### C. Cedar Rapids Flood

Mobro's claims arise out of communications between the parties concerning disaster remediation work following the Cedar Rapids, Iowa flood of 2008. In anticipation of the June flood, Mobro's general manager, Chad Reichert, and president, Craig Mettille, surveyed the area that was likely to be affected by the flood. Reichert and Mettille decided that Mobro would not be able to provide services to all of those that would be affected by the flood. Realizing that VVV was better equipped to handle this large-scale disaster, Reichert contacted Ron Veldman, a shareholder of VVV. During a later conversation,

Reichert spoke with Veldman and Steven Vandenberg, president of VVV, and the three agreed that VVV would pay Mobro a five-percent commission on gross revenues collected on flood remediation work that Mobro referred to VVV.  In addition, VVV agreed to pay Mobro a five-percent commission on gross revenues for all flood remediation work that VVV or its subcontractors performed in Mobro's RAM Territory as a result of any walk-up customers that VVV obtained.  VVV began work in the Waterloo/Cedar Rapids area on or about June 10, 2008, and Mobro supported VVV's efforts by soliciting contracts and providing leads for contracts to VVV.

On or about June 16, 2008, United Fire Group contacted Mobro to perform flood remediation services to its damaged building.  Mobro contacted VVV to provide VVV with a lead on the job, but VVV informed Mobro that ServiceMaster by Avenue of the Saints, another ServiceMaster Clean franchisee, had already contacted VVV with a lead on the United Fire Group job.  Mobro became concerned with ServiceMaster by Avenue of the Saints' involvement in the flood remediation process.  In particular, Mobro was concerned that customers would be confused if two different local ServiceMaster Clean franchisees were competing for the same business, and that ServiceMaster by Avenue of the Saints was ill-equipped to be involved in large-scale disaster remediation work.   To voice its concerns, Mobro's representatives contacted Ed Clark, the chief executive officer and majority shareholder of Clark Co.  In the first conversation with Ed Clark, Reichert and Mettille voiced their concerns about ServiceMaster by Avenue of the Saints.

### D.  Alleged Oral Contract

In a subsequent conversation with Ed Clark, Reichert and Mettille reiterated their concerns that ServiceMaster by Avenue of the Saints would continue to be a problem, and they requested that Ed Clark resolve the matter.  On or about June 20, 2008, Reichert, Mettille and Ed Clark discussed the issues that had arisen due to ServiceMaster by Avenue of the Saints' persistence in soliciting business in Mobro's RAM Territory.  Ed Clark stated that, because Mobro was the RAM, the matter of soliciting ServiceMaster Clean

customers was "[Mobro's] show." Complaint at ¶ 48. Ed Clark also said that he could not control ServiceMaster by Avenue of the Saints, and he asked Mobro to "do [its] best to work around [ServiceMaster by Avenue of the Saints]." *Id.*

Concerned that ServiceMaster by Avenue of the Saints would continue to solicit potential customers, Mobro's representatives then told Ed Clark that if Mobro was not going to receive a five-percent commission on all work done by all ServiceMaster Clean franchisees in the RAM Territory, then it would stop soliciting leads for other ServiceMaster Clean franchisees and instead secure contracts to perform itself. Ed Clark reiterated that disaster restoration work performed in Mobro's RAM Territory was "[Mobro's] show." *Id.* at ¶ 51. Ed Clark also assured Mobro's representatives that Mobro would be paid the five-percent commission on all commercial disaster remediation contracts that ServiceMaster Clean franchisees performed in Mobro's RAM Territory, and he requested that Mobro continue to solicit leads for VVV and other ServiceMaster Clean franchisees.

After the conversation with Ed Clark, Mobro continued to solicit leads for VVV and other ServiceMaster Clean franchisees. Mobro did not solicit any work that it could perform on its own, as it devoted all efforts to securing work for VVV and other ServiceMaster Clean franchisees. Mobro claims that Clark Co. benefitted from Mobro's solicitation of contracts for VVV and other ServiceMaster Clean franchisees because Clark Co. was entitled to a royalty on all disaster remediation work ServiceMaster Clean franchisees performed in Clark Co.'s Coordinator Contract Territory.

### E. Aftermath

When the flood remediation work was completed, Mobro did not receive the five-percent commission from VVV and other ServiceMaster Clean franchisees that had performed work in Mobro's RAM Territory. In 2010, Mobro contacted Ed Clark and asked that he honor his promise that Mobro would be paid a five-percent commission on all work performed by ServiceMaster Clean franchisees in Mobro's RAM Territory. Ed

Clark refused and denied that his company had any obligation to pay the five-percent commission. Ed Clark told Mobro that any agreements for disaster restoration work were agreements between Mobro and the individual franchisees, and that Clark Co. was not a party to such agreements.

Mobro subsequently filed the Complaint that contains two counts against Clark Co. First, Mobro alleges that Clark Co. breached an oral contract when it refused to pay the five-percent commission on all work performed by ServiceMaster Clean franchisees in Mobro's RAM Territory. Second, Mobro alleges that Clark Co. made a promise that Mobro would be paid a five-percent commission, Mobro relied on the promise and Clark Co. should be estopped from refusing to pay. The Complaint also contains three counts against VVV, but those allegations are not relevant to the court's analysis.

## V. ANALYSIS

In the Motion, Clark Co. asks the court to dismiss both of Mobro's claims against it. Clark Co. argues that Count I, breach of contract, should be dismissed because Mobro does not allege facts sufficient to indicate the plausible existence of an oral contract. Clark Co. argues that Count II, promissory estoppel, should be dismissed because Mobro does not allege facts sufficient to show that Clark Co. made a promise to Mobro. The court first examines whether Mobro has failed to state a claim for breach of contract. Then, the court examines whether Mobro has failed to state a claim for promissory estoppel.

### A. Breach of Contract

For the court to find a breach of contract under Iowa law[1], Mobro must prove: "'(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's

---

[1] A federal court in a diversity case must apply the substantive law of the forum state. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000).

breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach." *Med. Assocs. Health Plan, Inc. v. CIGNA Corp.*, 393 F. Supp. 2d 722, 726 (citing *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)).

The issue in this case is whether Mobro alleges sufficient facts to demonstrate the plausible existence of an oral contract. "In order to be bound [by an oral contract], the contracting parties must manifest a mutual assent to the terms of the contract, and this assent usually is given through the offer and acceptance." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 139 F. Supp. 2d 1071, 1080 (N.D. Iowa 2001) (internal quotation marks omitted). "To prove the existence of an oral contract, the terms must be sufficiently definite for a court to determine with certainty the duties of each party, the conditions relative to performance, and a reasonably certain basis for remedy." *Gallagher, Langlas & Gallagher v. Burco*, 587 N.W.2d 615, 617 (Iowa Ct. App. 1998). "[W]hen the terms are not definite, courts are reluctant to impose reasonable terms on contracting parties." *Id.* However, the agreement must only be reasonably certain and unequivocal in its essential terms. *Price v. Price*, 571 N.W.2d 214, 216-17 (Iowa Ct. App. 1997). "[F]or an oral contract to be found and enforceable, the terms must be so definitely fixed that nothing remained except to reduce the terms to writing." *Id.* at 215. However, when an oral contract appears to exist, Iowa courts are "reluctant to find it too uncertain to be enforceable." *Gallagher*, 587 N.W.2d at 617.

Mobro cites the facts of *Gallagher* to support its claim that an oral contract with definite terms exists in this case. In *Gallagher*, the court found that a father entered into an oral contract to pay his daughter's legal fees. *Id.* The law firm in *Gallagher* estimated fees of $1,000 per day but did not guarantee the number of days for which it would need to be compensated due to the uncertainty of the length of the proceedings. *Id.* In a conversation with an attorney for the firm, the father stated, "My word as a gentleman should be enough. . . . I told Mr. Langlas that I would and I will pay." *Id.* (internal

8

quotation marks omitted).  The court found this evidence sufficient to prove that an oral contract existed.  *Id.*

The facts of the present case differ from the facts of *Gallagher* in one significant aspect, and thus Mobro's reliance on *Gallagher* as support for its argument is misplaced. In the present case, Clark Co. assured Mobro that it was "[Mobro's] show" and that Mobro "would be paid" a five-percent commission.  Complaint at ¶ 51.  This is far different from the father in *Gallagher* stating, "I told Mr. Langlas that I would pay and I will pay."  *Gallagher*, 587 N.W.2d at 617.  The father's statement indicated his intent to pay $1,000 per day to the law firm for his daughter's legal fees, and the court found that such terms were "sufficiently definite for a court to determine with certainty the duties of each party."  *Id.*  In the present case, Mobro fails to allege terms that could plausibly lead the court to the same conclusion.

Clark Co. argues, and the court agrees, that Mobro has failed to allege facts sufficient to state a plausible breach of contract claim.  Based on one conversation in which Ed Clark assured Mobro that it would be paid a five-percent commission on flood work performed by other ServiceMaster Clean franchisees in its RAM Territory, Mobro asks the court to find that Clark Co. assumed a duty to pay this commission to Mobro.  The facts alleged are insufficient for the court to find any plausible existence of an oral contract between Mobro and Clark Co.  Clark Co.'s duties under this alleged contract are not certain.  Clark Co. never stated that it would pay the five-percent commission to Mobro. Instead, Ed Clark assured Mobro that it "would be paid" the five-percent commission. Complaint at ¶ 51.  By not identifying who would be responsible for paying the five-percent commission, the parties left great uncertainty as to the terms of the alleged contract.  The terms of the alleged contract are not "sufficiently definite for [the] court to determine with certainty," *Gallagher*, 587 N.W.2d at 617, whether Ed Clark was referencing Mobro's prior contracts with other ServiceMaster Clean franchisees (such as

VVV), or whether Ed Clark was assuming a duty, on behalf of Clark Co., to pay a five-percent commission on all work performed by ServiceMaster Clean franchisees.

Mobro's allegations in the Complaint demonstrate that Ed Clark made oral assurances to Mobro, which are not sufficient to constitute an oral contract. *See Wagner Enters.*, 397 F. Supp. 2d 1097, 1106 (N.D. Iowa 2005) (holding that a licensing representative's statement to a licensee concerned about renewal of its licensing contract that, "Unless you just totally screw up, it's an automatic thing to renew," was an oral assurance rather than an enforceable contract). Accordingly, because Mobro has failed to allege the existence of an oral contract between it and Clark Co., Mobro has failed to allege facts sufficient to state a plausible claim for breach of contract. The lack of a valid oral contract is an "insuperable bar to relief" for Mobro's breach of contract claim. For this reason, the court will grant Clark Co.'s Motion as to Count I (Breach of Contract).

### B. Promissory Estoppel

For the court to find that Clark Co. is liable to Mobro for damages based on promissory estoppel, Mobro must prove:

> (1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Wagner Enters.*, 397 F. Supp. 2d at 1109.

In this case, the court must first determine whether Mobro has alleged a clear and definite promise in the Complaint. The Iowa Supreme Court has examined the phrase "clear and definite promise":

> A "promise" is "[a] declaration . . . to do or forbear a certain specific act." *Black's Law Dictionary* 1213 (6th ed. 1990). A promise is "clear" when it is easily understood and is not ambiguous. *See Webster's Third New Int'l Dictionary*

> 419 (unab. ed. 1993). A promise is "definite" when the
> assertion is explicit and without any doubt or tentativeness.
> *See id.* at 592.

*Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 50-51 (Iowa 1999). In *National Bank of Waterloo v. Moeller*, 434 N.W.2d 887, 889 (Iowa 1989), the Iowa Supreme Court discussed three cases that considered whether a clear and definite promise had been made. The Iowa Supreme Court emphasized that it found a clear and definite promise in cases that "demonstrated a clear understanding by the promisor that the promisee was seeking an assurance upon which he could rely and without which he would not act." *Id.* "This dual emphasis on clarity and inducement parallels the Restatement (Second) definition of an agreement for purposes of promissory estoppel as '[a] promise which the promisor should reasonably expect to induce action . . . on the part of the promisee.'" *Id.* (quoting Restatement (Second) of Contracts § 90 (1981)). In contrast, a representation, as opposed to a promise, is "'a statement . . . made to convey a particular view or impression of something with the intention of influencing opinion or action.'" *Schoff*, 604 N.W.2d at 51 (quoting *Webster's Third New Int'l Dictionary*, *supra*, at 1926).

Mobro argues that Clark Co. made a clear and definite promise that Mobro would be paid a five-percent commission on all disaster remediation contracts performed by ServiceMaster Clean franchisees in Mobro's RAM Territory. Mobro alleges that by making this promise, Clark Co. assumed a duty to pay a five-percent commission to Mobro on work performed by any ServiceMaster Clean franchisee in Mobro's RAM territory. Mobro argues that Clark Co. had an economic incentive to make this promise and induce Mobro to continue soliciting work for other ServiceMaster Clean franchisees because Clark Co. received royalties from work performed by ServiceMaster Clean franchisees in the area.

Accepting the allegations as true, the facts demonstrate that Ed Clark, on behalf of Clark Co., told Mobro that it would be paid a five-percent commission with the purpose of inducing Mobro to continue soliciting contracts for other ServiceMaster Clean

franchisees to perform. However, these allegations are not sufficient to show that Clark Co. made a "clear and definite promise," *Wagner Enters.*, 397 F. Supp. 2d at 1109, to pay Mobro a five-percent commission on all commercial disaster remediation work performed by other ServiceMaster Clean franchisees in Mobro's RAM Territory. By stating that Mobro "would be paid" the commission, Complaint at ¶ 51, it is unclear whether Ed Clark was stating that Clark Co. would pay the five-percent commission, or whether he was assuring Mobro that VVV would pay the commission that it owed Mobro pursuant to Mobro's contract with VVV. There is a great level of doubt and ambiguity as to what Ed Clark meant when he made these statements, and thus Mobro's allegations are not sufficient to show the plausible existence of a "clear and definite promise." *Wagner Enters.*, 397 F. Supp. 2d at 1109.

In sum, Mobro has failed to allege facts sufficient to support a promissory estoppel claim. The facts in the Complaint do not support the allegation that Clark Co. made a "clear and definite promise," *id.*, to pay Mobro a five-percent commission on work done by other ServiceMaster Clean franchisees in Mobro's RAM Territory. The lack of a "clear and definite promise" is an "insuperable bar to relief," *Benton*, 524 F.3d at 870, for Mobro's promissory estoppel claim. For this reason, the court will grant Clark Co.'s Motion as to Count II (Promissory Estoppel).

### C. Parol Evidence Rule/Integrated Agreement

Clark Co. argues that Ed Clark's alleged statement that Mobro would be paid the five-percent commission is barred by the parol evidence rule because the written Franchise Agreement is a fully integrated, exclusive agreement between the parties. Having found that Mobro has failed to allege facts sufficient to show that an oral contract plausibly existed, the court need not address Clark Co.'s parol evidence argument. Clark Co. also argues that Mobro's promissory estoppel claim must be dismissed because the alleged statement modifies a written agreement between the parties. Having found that Mobro has

failed to allege facts sufficient to state a plausible claim for promissory estoppel, the court need not address this argument.

### VI.  ORDER

For the reasons stated above, it is **ORDERED** as follows:

1.      The Motion to Dismiss (docket no. 11) is **GRANTED**.

2.      Division II of the Petition, stating claims against Clark Companies, Inc., is **DISMISSED**.

3.      Division I of the Petition, stating claims against VVV Corporation, will proceed in its normal course.

DATED this  26th  day of _____ June _____, 2012.

_____

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA